Michelle HOWARD, Appellant,

v.

EAST TEXAS BAPTIST UNIVERSITY, Appellee.

No. 06–03–00004–CV.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 12, 2003.

Decided Dec. 4, 2003.

Phillip B. Baldwin Jr., Phillip B. Baldwin, Jr., PC, Marshall, for Appellant.

Kevin D. Jewell and William S. Helfand, Magenheim, Bateman & Helfand, PLLC, Houston, for Appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

While visiting an outdoor swimming pool, which was owned by East Texas Baptist University (ETBU) and made publicly available for a nominal fee, Michelle Howard allegedly injured her back when the pool's diving board "double bounced." She contends the diving board's fulcrum was improperly positioned, so one side of the board was unsupported and she was "propelled upward in an unstable manner and in an unexpected direction." Howard alleges that her automatic attempt to correct herself in midair resulted in injuries to her back.

Based on this occurrence, Howard initially sued ETBU June 1, 2001. As in the present lawsuit, ETBU filed a motion for summary judgment, which was set for submission May 31, 2002. Howard filed a motion for nonsuit May 23, 2002. On July 5, 2002, Howard refiled her suit against ETBU alleging causes of action for premises liability, negligence, and gross negligence. ETBU answered August 6, 2002, and filed its motion for summary judgment two days later. On September 5, 2002, the day before the setting for submission on the motion for summary judgment, Howard filed an opposed motion for continuance that was subsequently denied. On November 25, 2002, the trial court granted

ETBU's motion for summary judgment. Howard now appeals, contending summary judgment was improper and the trial court erred in denying her motion for continuance. We affirm.

*Summary Judgment*

A summary judgment movant has the burden of showing that there is no genuine issue of material fact and that judgment for movant is proper as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, we consider true any evidence favorable to the nonmovant and will resolve any doubts and indulge every reasonable inference in nonmovant's favor. *Id.* Because the trial court's order granting summary judgment does not specify the basis for the order, we will uphold the trial court's decision if it is correct under any theory advanced in ETBU's motion for summary judgment. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

■ As mentioned above, Howard sued ETBU for premises liability, negligence, and gross negligence. Reviewing the grant of summary judgment on those causes of action requires that we determine the applicable standard of care. Therefore, the Texas recreational use statute is pivotal. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 75.001–.004 (Vernon Supp. 2003).

TEX. CIV. PRAC. & REM.CODE ANN. § 75.002(c) provides:

If an owner ... of real property other than agricultural land gives permission to another to enter the premises for

recreation, the owner ..., by giving the permission, does not: (1) assure that the premises are safe for that purpose; (2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or (3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.

If applicable in this case, the recreational use statute would apply the standard of care owed by a landowner to a trespasser; that is, ETBU would be liable only for injuries incurred through its willful, wanton, or grossly negligent conduct. *Tex. Utils. Elec. Co. v. Timmons*, 947 S.W.2d 191, 193 (Tex.1997).

Howard contends the recreational use statute does not apply because ETBU improperly calculates the amount of ad valorem taxes paid on the "premises." Properly identifying the premises for which ad valorem taxes should be considered is critical because it directly affects the applicability of the statute. The statute, by its terms, applies to ETBU only if it is an owner who

charges for entry to the premises, but whose total charges collected in the previous calendar year for all recreational use of the *entire premises* of the owner ... are not more than ... twice the total amount of ad valorem taxes imposed on the *premises* for the previous calendar year.

TEX. CIV. PRAC. & REM.CODE ANN. § 75.003(c)(2) [1] (emphasis added). While ETBU interprets the statute to include the $10,782.72 in ad valorem taxes imposed on

---

**1.** The amendment of Section 75.003(c)(2), effective September 1, 1997, resulted in the formulation quoted above—the version applicable to this case. The subsection was subsequently amended, effective as to causes of action accruing on or after September 1,

2003, providing that the statute applies if revenues are not more than *twenty* times ad valorem taxes. Since this case arose before September 1, 2003, the 2003 amendment does not apply to this case.

ETBU's entire premises, Howard's interpretation would include no taxes, since ETBU pays no tax on the swimming pool premises. If ETBU is correct in comparing the $5,132.74 [2] collected for the recreational use of its entire premises to the $10,782.72 in ad valorem taxes imposed on all of its property, the recreational use statute clearly applies and summary judgment was appropriately granted.[3] If Howard's assertion is correct, however, and the $5,132.74 collected for the recreational use of ETBU's entire premises is properly compared to the lack of any ad valorem taxes imposed on the swimming facility premises, the recreational use statute does not apply, and the case should be remanded for further proceedings.

■ Statutory interpretation is a matter of law, *In re Canales,* 52 S.W.3d 698, 701 (Tex.2001), the primary rule of which is "to read the enactment as a whole and to construe the statute so as to give effect to legislative intent." *Tex. Bldg. Owners & Managers Ass'n, Inc. v. Pub. Util. Comm'n,* 110 S.W.3d 524, 531 (Tex.App.-Austin 2003, no pet.) (citing *State v. Pub. Util. Comm'n,* 883 S.W.2d 190, 196 (Tex. 1994)). Whether the recreational use statute applies is governed by three tests set out in Section 75.003(c). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 75.003(c). Since

---

**2.** In addition to confirming that the university collected $5,132.74 for the recreational use of its outdoor swimming pool, ETBU's Vice President for Administration and Finance, Sam Fogle, stated in his affidavit that the university also received $5,699.85 from its lifetime fitness program and $11,169.00 from its challenge courses. If all three figures are used in calculating the total revenues collected for the recreational use of ETBU's entire premises, it is clear that they exceed twice the total amount of ad valorem taxes imposed on the premises for the previous calendar year, rendering the statute inapplicable. We agree with ETBU's position, however, that the charges for its lifetime fitness program and challenge courses should not be included in calculating the total revenues collected for the recreational use of its entire premises for two reasons. First, although the lifetime fitness program allows individuals to use the university's gymnasium, locker rooms, and weightlifting and aerobic equipment, it does not fit within the recreational use statute's definition of "recreation." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 75.001(3) (Vernon Supp.2003) (including activities such as hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, cave exploration, waterskiing and other water sports, or any other activity associated with enjoying nature or the outdoors); *Tarrant County Water Control & Improvement Dist. No. 1 v. Crossland,* 781 S.W.2d 427, 437 (Tex.App.-Fort Worth 1989, writ denied) ("This statute serves the salutary purpose of encouraging landowners to allow the public to enjoy out-

door recreation on the landowner's property by limiting the liability of the landowner for personal injury which often results from vigorous outdoor activities."), *overruled on other grounds, City of Dallas v. Mitchell,* 870 S.W.2d 21, 23 (Tex.1994). Second, although the challenge courses had recreational components, the scope of the program exceeds the scope of mere recreation and, therefore, is not contemplated by the recreational use statute. *Torres v. City of Waco,* 51 S.W.3d 814, 821–22 (Tex.App.-Waco 2001, no pet.).

**3.** ETBU even seems to argue it should be entitled to compare the pool revenues to the potential ad valorem taxes that would have been charged on its entire premises if not for the exemption it enjoys on most of its premises—a total of $53,373.88. On oral argument, counsel suggested that the word "imposed" allows use of even that higher number in the comparison. We disagree. Throughout the Texas Tax Code, the word "imposed" is ordinarily used to refer to taxes charged. This is especially true when, as in the recreational use statute, the reference is to the "amount" of taxes "imposed," and becomes crystal clear when also referring to exemptions. *See, e.g.,* TEX. TAX CODE ANN. §§ 11.181(e), 11.182(d), 11.184(e) (loss of exemptions); § 11.26(a) (school taxes on homesteads of elderly persons); and §§ 11.431(b), 11.433(c), 11.434(c), 11.435(c), and 11.439(b) (late applications for exemptions) (Vernon 2001). We believe the word "imposed" in this context refers to taxes actually charged.

ETBU charged for entry (negating test one) and did not have liability insurance coverage in effect on an act or omission described by Section 75.004(a) (negating test three), we concern ourselves only with test two, the financial-ratio test, asking whether, in the calendar year before the occurrence in question, the amount charged by ETBU for recreational uses of its "entire premises" exceed twice the ad valorem taxes imposed on "the premises." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 75.003(c)(2).

On careful review of the language of that test, we conclude that, by using the terms "entire premises" and "the premises" within the same test, the Legislature intended the meaning of the latter to be the same as the former. In other words, the use of the words "the premises" merely refers back to and takes on the meaning of the more specific term, "entire premises."

Our interpretation comports with other courts' assessments of the Legislature's general intent in enacting the recreational use statute. After analyzing the legislative history of the recreational use statute, the First Court of Appeals determined that "the legislature enacted the statute to encourage a possessor of land to allow persons whom he would not otherwise invite as social guests to enter his land for recreational purposes" in exchange for "a lower standard of care." *Lipton v. Wilhite*, 902 S.W.2d 598, 600 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Building on the *Lipton* analysis, the Third Court of Appeals explained that the Legislature apparently intended the statute to operate "as a limited exception to the traditional common-law duties owed by landowners for the specific purpose of creating recreational facilities for the general public" and "considered the imposition of a lower standard of care for persons receiving the ben-

efit of recreational access an appropriate measure for allocating costs under the statute." *McMillan v. Parker*, 910 S.W.2d 616, 618 (Tex.App.-Austin 1995, writ denied).

Although not dealing specifically with the same issue, the Third Court of Appeals further stated the purpose of Section 75.003(c)

was to expressly prevent landowners who specialize in commercial recreation from wrongfully taking advantage of the statute. . . . The limited application of the statute to owners who charge a nominal entrance fee (presumably to defray costs of maintaining the property) rather than engaging in commercial recreation for profit is consistent with the overall purpose of the statute: to create and preserve land that the general public may use for recreational purposes.

*Id.* at 619. In light of this interpretation, Howard's position that the calculation of ad valorem taxes imposed on ETBU should be limited to the property on which the swimming facility is located is contrary to the Legislature's intent to make available to the public for recreational purposes land that would otherwise be inaccessible. If this were the case, property owners like ETBU would have no incentive to open private property to the public, knowing they would be subject to a higher standard of care.

We hold, therefore, that the meaning of "the premises" in Section 75.003(c)(2)(A), for the purpose of calculating the ad valorem taxes imposed in determining the applicability of the recreational use statute, encompasses the property opened to the public for recreational use and any other real property owned by the party seeking limited liability under the statute; that is, the owner's *entire* premises.

Since the recreational use statute applies, it limits the standard of care ETBU

owes to Howard. As long as ETBU did not act willfully, wantonly, or in a grossly negligent manner, it will not be held liable for Howard's alleged injuries. *Timmons,* 947 S.W.2d at 193.

■ Howard contends her expert's report and affidavit establish elements of gross negligence. The summary judgment evidence, however, establishes as a matter of law that ETBU was not grossly negligent. Gross negligence includes two elements:

> (1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

*Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 23 (Tex.1994). Howard's expert, without personally inspecting the diving board, based his report and affidavit on the original petition, photographs of the diving board, and, in large part, on the affidavits of two ETBU employees. He simply opined that "[t]he condition of the board at the time of the accident resulted from an inexcusable lack of normal maintenance and an equally inexcusable lack of concern for safety" and that "[t]he board was not kept safe in a manner consistent with the American National Standard ... for public swimming pools." Little more was offered in the preliminary report attached to the expert's affidavit: He indicated that the *major factors suggesting ETBU's culpability* included the lack of (1) maintenance of the diving board's surface and (2) level mounting of the board and the fulcrum, citing the testimony of the two ETBU employees that they were aware the fulcrum shifted periodically, yet never reported a need for repair.

In examining the statements of these two employees, however, it is clear no genuine issue of material fact was raised as to any gross negligence by ETBU. On the contrary, although the employees indicated they had been aware for some time that the diving board's fulcrum would shift occasionally after extensive use, the shifting never caused problems suggesting any risk to divers and, whenever a periodic inspection of the board revealed any such shifting, the fulcrum would simply be repositioned. One of the employees, a lifeguard at the pool for ten years, stated in an affidavit that she has "never received any complaint, or even any suggestion, that the diving board was functioning improperly," nor has she ever "observed any defects or problems with the diving board, either before or after" the date Howard allegedly injured herself. The evidence simply does not suggest that, considering the probability and magnitude of the potential harm to others, there was an extreme degree of risk involving the diving board's use or that ETBU was aware of, or acted with conscious indifference to, any risk involving the rights, safety, or welfare of its patrons.[4] The summary judgment was properly granted.

*Motion for Continuance*

■ A ruling on a motion for continuance is within the trial court's sound discretion, which will be reviewed only for clear abuse of that discretion. *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex.1986). The test applied by reviewing courts is "whether the court acted without reference to any guiding rules and principles" or, stated differently, whether the court acted arbitrarily or unreasonably. *Hodson v.*

---

4. There is no assertion ETBU acted willfully or wantonly.

*Keiser,* 81 S.W.3d 363, 368 (Tex.App.-El Paso 2002, no pet.) (citing *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985)). In making such a determination, reviewing courts must "view[ ] the evidence in the light most favorable to the trial court and indulge[ ] every legal presumption in favor of the judgment." *Hatteberg v. Hatteberg,* 933 S.W.2d 522, 526 (Tex.App.-Houston [1st Dist.] 1994, no writ).

Howard contends the trial court abused its discretion when it denied her motion for continuance, thus denying her an adequate opportunity for discovery and considering ETBU's allegations that Howard had abused the discovery process. Howard initially sued ETBU June 1, 2001, followed by ETBU's motion for summary judgment, which was set for submission May 31, 2002. Howard filed a motion for nonsuit May 23, 2002, only to refile the lawsuit July 5, 2002. Because the present lawsuit was on file for only two months before the September 6, 2002, setting for submission on ETBU's motion for summary judgment, however, Howard argues that she was not permitted a reasonable time to conduct discovery and that the court should not be prejudiced against her for having earlier exercised her right to file a nonsuit.

■■■ The question of whether a nonmovant has had adequate time to conduct discovery is decided on a case-by-case basis. *McClure v. Attebury,* 20 S.W.3d 722, 729 (Tex.App.-Amarillo 1999, no pet.). A litigant's failure to diligently pursue discovery will not authorize the granting of a continuance. *State v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863, 865 (Tex.1988). Howard's motion specifically stated she was requesting the continuance because her attorney needed additional time to prepare; however, the motion's supporting affidavit failed to give any indication of due diligence exercised.

The rule on summary judgment "clearly contemplates that the trial court will allow the parties a reasonable opportunity to conduct discovery before granting summary judgment ... allow[ing] parties to obtain the fullest knowledge of facts and issues before the disposition of their case." *Levinthal v. Kelsey–Seybold Clinic, P.A.,* 902 S.W.2d 508, 512 (Tex.App.-Houston [1st Dist.] 1994, no writ). Howard essentially argues that the discovery period was unreasonably abbreviated by the trial court's denial of her motion for continuance. We would agree with this position if Howard had only been allowed a total of two months for discovery, but the argument is more difficult to accept considering that (1) the initial lawsuit by Howard against ETBU for the same causes of action was filed in June 2001, (2) ETBU filed its first motion for summary judgment at the end of May 2002, and (3) Howard, by taking a nonsuit, effectively delayed the summary judgment submission deadline until September 2002. The real question is whether it is permissible for a trial court to consider the amount of time available to the parties for discovery, even if the bulk of that time preceded the nonsuit and refiling of the plaintiff's claims.

On this point, it is instructive that both parties seemingly treated the second lawsuit as a continuation of the first, using discovery gathered during the first suit. Howard, for example, cites at least three depositions taken in November 2001 and April 2002, while ETBU cites at least one deposition and three affidavits dating from November 2001 to May 2002. When considering whether a trial court abused its discretion in denying a motion for continuance, appellate courts may consider such factors as (1) the length of time the case has been on file, (2) the materiality of the

discovery sought, and (3) whether due diligence was exercised in obtaining the discovery. *Id.* at 510. "Furthermore, we note that in cases where a trial judge's discretion comes into play, . . . it has long been the rule that the judge may take into account the entire procedural history of the case." *GeoChem Tech Corp. v. Verseckes,* 929 S.W.2d 85, 90 (Tex.App.-Eastland 1996), *rev'd on other grounds,* 962 S.W.2d 541 (Tex.1998); *Waste Water, Inc. v. Alpha Finishing & Developing Corp.,* 874 S.W.2d 940, 942 (Tex.App.-Houston [14th Dist.] 1994, no writ). Under the circumstances, we cannot say that the parties in this case were not permitted a reasonable opportunity to conduct discovery.

Also, the apparently brief period in which Howard had the opportunity to conduct discovery since refiling the lawsuit does not take into account Howard's advantaged position of having known for over three months—from the time ETBU filed its motion for summary judgment in the first lawsuit to the time Howard filed her response in the second lawsuit—ETBU's grounds for the motion and the opinion of its expert. The record suggests Howard neglected to avail herself of this information. The supporting affidavit attached to Howard's motion for continuance indicates Howard requested that ETBU make its facilities available to her expert, but this request was made in a letter dated only two days before the summary judgment submission deadline.

We hold it was within the trial court's sound discretion, when considering the motion for continuance, to consider the time lapsed, and the actions taken and not taken, during pendency of the first suit. Since Howard has not shown that the trial court clearly abused its discretion in overruling her motion for continuance, it would be error for us to reverse this case be-

cause of that ruling. *Wood Oil Distrib., Inc.,* 751 S.W.2d at 865.

*Conclusion*

Because the amount collected for the recreational use of ETBU's property was less than twice the amount of ad valorem taxes imposed, we hold that the recreational use statute applies and that the standard of care ETBU owed to Howard was no greater than the degree of care owed to a trespasser; we also hold that the trial court did not abuse its discretion in denying Howard's motion for continuance.

We, therefore, affirm the trial court's grant of summary judgment.