**UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, Appellant,**

v.

**Ricardo A. GARCIA, Appellee.**

**No. 14–10–01021–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 26, 2011.

Timothy Edward Boughal, Austin, for appellant.

Carlos Leon, Sugarland, for appellee.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and BOYCE.

## OPINION

WILLIAM J. BOYCE, Justice.

Appellee Ricardo A. Garcia sued appellant University of Texas Health Science Center at Houston ("UT Health") to recover for injuries he sustained while playing on UT Health's outdoor sand volleyball court. UT Health filed this interlocutory appeal from the trial court's denial of UT Health's plea to the jurisdiction. We reverse and remand.

## BACKGROUND

Garcia was invited by a co-worker in April 2008 to play in an informal volleyball league tournament on the outdoor sand volleyball courts at UT Health's Recreation Center. During a pre-game warm up, Garcia alleges that he injured the big toe on his left foot when he turned to retrieve a nearby ball and caught the toe on a piece of tarp that had become exposed from beneath the sand. Garcia testified in his deposition:

> I turned to go get the ball and that's when I heard the snap, if you will, and then felt the pain.... I stopped and I looked down at my foot because I mean, the pain was in my foot and then I was—disbelief is the only word that

comes to mind.... [The bone of my big toe] ripped through the skin on [the interior] side of the toe.... The toe turned away. I mean, it was off to the right and the bone was sticking off to the left....

Garcia sued UT Health to recover for the injuries he sustained as a result of the incident, alleging that UT Health "knew (or should have known) that the sand on the volleyball court had to be periodically inspected, maintained, and repaired. [UT Health] knew that, left unattended, the condition of the volleyball court would likely deteriorate and expose players to an unreasonable risk of injury."

■ UT Health filed a plea to the jurisdiction and motion to dismiss, arguing that Garcia's claim was barred by sovereign immunity under the Texas Tort Claims Act and the Texas Recreational Use Statute. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.001–.109 (Vernon 2011) (Texas Tort Claims Act); *Id.* §§ 75.001–.006 (Vernon 2011) (Texas Recreational Use Statute). On October 1, 2010, the trial court rejected UT Health's plea and motion and signed an "Order Denying Defendant's Motion to Dismiss for Lack of Jurisdiction." This interlocutory appeal ensued. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon 2008).[1]

UT Health argues in two issues that Garcia's claims do not fall within a waiver of sovereign immunity because (1) the Recreational Use Statute limits the duty of care UT Health owed to Garcia to that owed to a trespasser, and Garcia has not alleged that UT Health injured Garcia "through grossly negligent, willful, or wanton conduct;" and (2) if the Recreational Use Statute does not apply, the duty of care UT Health owed to Garcia under the Tort Claims Act was the duty owed to a licensee, and Garcia has not alleged that UT Health "possessed actual knowledge of the allegedly dangerous condition."[2]

## ANALYSIS

■ A challenge to a trial court's subject matter jurisdiction may be asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex.2004); *Bland Ind. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). Whether a court has subject matter jurisdiction is a question of law that we review *de novo. State v. Holland,* 221 S.W.3d 639, 642 (Tex.2007); *Miranda,* 133 S.W.3d at 226.

■ Sovereign immunity deprives a Texas trial court of subject matter jurisdiction for suits against the state or cer-

---

1. We reject Garcia's argument that we lack jurisdiction over this appeal. Garcia argues that the denial of UT Health's plea and motion "relates only to immunity from liability rather than immunity from suit." He argues further that immunity from liability is a non-jurisdictional issue, and that an interlocutory appeal is not permitted from the trial court's denial of a motion based on such an issue. However, immunity from suit under the Texas Tort Claims Act is coextensive in this case with immunity from liability. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.025(a) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by [the Texas Tort Claims Act]."); *see also Stephen F. Austin State Univ. v. Flynn,* 228 S.W.3d 653,

660 (Tex.2007) ("[B]ecause the recreational use statute modifies the Tort Claims Act's waiver of sovereign immunity, it is properly part of the government's plea to the jurisdiction and thus part of the interlocutory appeal."). Therefore, we have appellate jurisdiction.

2. UT Health's third issue on appeal relates to an asserted waiver of sovereign immunity for negligent use of tangible personal property, a theory of liability that Garcia has affirmatively abandoned on appeal. We do not discuss UT Health's third issue or the jurisdictional arguments made to the trial court regarding this theory.

tain governmental units unless the state consents to suit.[3] *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). The Tort Claims Act provides a limited waiver of sovereign immunity. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.001–.109.

The Tort Claims Act expressly waives sovereign immunity for injuries arising out of (1) the use of publicly owned automobiles; (2) the use of tangible personal property; and (3) premises defects. *Cnty. of Cameron v. Brown,* 80 S.W.3d 549, 554 (Tex.2002); *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.021. Garcia's allegations are properly raised in the context of a premises defect claim. *See Miranda,* 133 S.W.3d at 229–30 (plurality holding) (injury caused by limb falling from tree located on landowner's property "constitutes an allegation of a condition or use of real property and is an allegation of a premises defect"); *Timberwalk Apartments, Partners, Inc. v. Cain,* 972 S.W.2d 749, 753 (Tex.1998) (premises defect claim involves alleged failure to reduce or eliminate a risk of harm created by condition on premises).

To determine whether the state waived sovereign immunity in relation to Garcia's premises defect claim, we next consider (1) what duty of care UT Health owed to Garcia while he was playing on an outdoor sand volleyball court on UT Health's premises; and (2) whether Garcia alleged sufficient facts that, if proven, would establish a breach of that duty. *See Stephen F. Austin State Univ. v. Flynn,* 228 S.W.3d 653, 659–60 (Tex.2007); *State v. Shumake,* 199 S.W.3d 279, 287–88 (Tex.2006); *see also Brenham Housing Auth. v. Davies,* 158 S.W.3d 53, 57 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

## I. Duty of Care

The Tort Claims Act provides that in premises defect cases, the state owes to the claimant the duty of care that a private person owes to a licensee on private property unless the claimant has paid for the use of the premises. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.022(a); *Shumake,* 199 S.W.3d at 283. If a claimant has paid for use of the premises, then the state owes to the claimant the duty that a private person owes to an invitee on private property. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a); *Univ. of Tex. Med. Branch at Galveston v. Davidson,* 882 S.W.2d 83, 85 (Tex.App.-Houston [14th Dist.] 1994, no writ) ("Although the [Tort Claims Act] does not specifically state, case law interpreting the [Tort Claims Act] has held that if the claimant pays for use of the premises, then § 101.022(a) imposes upon the State the same duty of care a private landowner owes an invitee.").

The Recreational Use Statute also addresses the duty of care owed by a landowner to those who enter the landowner's property for recreational purposes; it controls over the Tort Claims Act where applicable. *Shumake,* 199 S.W.3d at 284; *see* Tex. Civ. Prac. & Rem.Code Ann. § 75.002; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.058 ("To the extent that [the Recreational Use Statute] limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under [the Tort Claims Act], [the Recreational Use Statute] controls."); Tex. Civ. Prac. & Rem.Code Ann. § 75.003(g) (companion statute that gives the same directive). This further limitation on liability encourages landowners to open their lands to the public for recreational use. *Shumake,* 199 S.W.3d at 284.

---

**3.** The parties do not dispute that UT Health is a governmental unit. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.001(3); Tex. Educ. Code Ann. §§ 73.001, 73.051–.057 (Vernon 2002).

The Recreational Use Statute states in relevant part:

> If an owner ... gives permission to another to enter the premises for recreation, the owner ... by giving the permission, does not:
>
> > (1) assure that the premises are safe for that purpose;
> >
> > (2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or
> >
> > (3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.

Tex. Civ. Prac. & Rem.Code Ann. § 75.002(c).

UT Health argues that the trial court lacked subject matter jurisdiction over Garcia's premises defect claim because (1) the Recreational Use Statute applies and limits the applicable duty of care to that owed to a trespasser; and (2) Garcia has not alleged that UT Health injured Garcia "through grossly negligent, willful, or wanton conduct" as necessary to establish a breach of that duty. *See* Tex. Civ. Prac. & Rem.Code Ann. § 75.002(d) (subsection (c) "shall not limit the liability of an owner

... of real property who has been grossly negligent or has acted with malicious intent or in bad faith."). Garcia argues that the applicable duty is that owed to a licensee or invitee under the Tort Claims Act; he contends that the Recreational Use Statute does not apply here because outdoor sand volleyball is not "recreational" within the meaning of the statute.

██ Garcia argues that competitive sports such as organized outdoor sand volleyball never have been expressly included in the laundry list of activities defined as "recreational" under the statute, despite numerous amendments to add and remove specific activities from that list.[4]

The statute defines "recreation" as "an activity such as" hunting; fishing; swimming; boating; camping; picnicking; hiking; pleasure driving, including off-road motorcycling and off-road automobile driving and the use of all-terrain vehicles; nature study, including bird-watching; cave exploration; waterskiing and other water sports; bicycling and mountain biking; disc golf; on-leash and off-leash walking of dogs; or radio control flying and related activities. Tex. Civ. Prac. & Rem.Code Ann. § 75.001(3).[5] This list is not exhaustive, and the term "recreation" expressly includes "any other activity associated with

---

**4.** Garcia also argues that the statute does not apply even if we conclude that Garcia was participating in a recreational activity because Garcia's team had to pay a registration fee to enter the league tournament. The section of the recreational use statute that distinguishes between the duties owed to paying and non-paying entrants begins with the phrase "[e]xcept for a governmental unit." *See* Tex. Civ. Prac. & Rem.Code Ann. § 75.003(c). "The plain meaning of this qualifying language is that the distinction between the duties owed to paying versus non-paying entrants is only applicable to private landowners." *See State ex rel. Tex. Dept. of Parks & Wildlife v. Shumake,* 131 S.W.3d 66, 74–75 (Tex.App.-Austin 2003), affirmed by 199 S.W.3d 279, 288 (Tex.2006); *see also State of*

*Tex. Parks & Wildlife Dept. v. Morris,* 129 S.W.3d 804, 809 (Tex.App.-Corpus Christi 2004, no pet.). We conclude that the application of the recreational use statute to a governmental unit is not affected by whether it charges a fee. *See Morris,* 129 S.W.3d at 809; *Shumake,* 131 S.W.3d at 74–75.

**5.** The statute also includes the following activities "only if the activities take place on premises owned ... by a governmental unit for the purpose of those activities:" hockey and in-line hockey; skating, in-line skating, roller-skating, skateboarding, and rollerblading; soap box derby use; and paintball use. Tex. Civ. Prac. & Rem.Code Ann. § 75.002(e).

enjoying nature or the outdoors." *See* Tex. Civ. Prac. & Rem.Code Ann. § 75.001(3)(L); *City of Bellmead v. Torres*, 89 S.W.3d 611, 615 (Tex.2002).

Courts have concluded that the following activities also constitute "recreation" for purposes of the statute: sitting or pushing someone else on a park swing; walking through the clubhouse of a city-owned, public golf course after playing a round of golf; diving into an outdoor swimming pool; playing on park playground equipment; and playing an informal game of soccer at a park picnic. *See, e.g., City of Bellmead*, 89 S.W.3d at 614–15 ("In our view, sitting on a swing is the type of activity that the Legislature intended to include as recreation when they enacted the Statute."); *City of Plano v. Homoky*, 294 S.W.3d 809, 817 (Tex.App.-Dallas 2009, pet.) ("Thus, while Homoky may not have been swinging her club or walking outdoors in-between holes on the golf course, what she was doing when she was injured [while walking through the club house] was . . . related to the activity of playing golf."); *Howard v. E. Tex. Baptist Univ.*, 122 S.W.3d 407, 410 n. 2 (Tex.App.-Texarkana 2003, no pet.) (in determining whether fees collected for recreational use of private university's outdoor swimming pool exceeded twice the total amount of ad valorem taxes on the premises for purposes of former version of section 75.003(c)(2), concluding that additional charges for university's lifetime fitness program and challenge courses should not be considered in calculation because they are not for "recreational" uses within the meaning of statute); *Flye v. City of Waco*, 50 S.W.3d 645, 646–47 (Tex.App.-Waco 2001, no pet.) (parties agreed on appeal that plaintiff went to a park "to engage in activities that fall within the scope of the Recreational Use Statute" and was injured while pushing a friend on a swing); *Kopplin v. City of Garland*, 869 S.W.2d 433, 441 (Tex.App.-Dallas 1993, writ denied) ("We conclude that playing on playground equipment on the City's playground is a recreational activity contemplated under Chapter 75."); *see also Garcia v. City of Richardson*, No. 05–01–01755–CV, 2002 WL 1752219, at *2–3 (Tex.App.-Dallas July 30, 2002, pet. denied) (not designated for publication) (informal soccer game at a picnic in park constituted "any other activity associated with enjoying nature or the outdoors").

▮ In determining whether a particular activity is "recreational" for these purposes, the relevant inquiry is "what [the plaintiff] was doing when [the plaintiff] was injured." *City of Bellmead*, 89 S.W.3d at 614. Garcia alleges that he was "participating in a game of beach volleyball with other members and guests" when he "caught his toe on part of the plastic lining that had presumably been installed well beneath the sandy surface of the volleyball court." Applying *City of Bellmead*'s terminology, outdoor sand volleyball is "certainly within the type of activity 'associated with enjoying . . . the outdoors,'" and the statute "specifically contemplates recreation related to structures on the property" such as the outdoor sand court. *See id.* at 615 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 75.001(3)(L)). We conclude that playing sand volleyball on an outdoor court—much like playing regular or disc golf on an outdoor course, diving from a diving board on an outdoor pool, playing soccer in a park, and playing on playground equipment in an outdoor park—is a recreational activity within the meaning of the statute.[6] *See* Tex. Civ. Prac. &

---

6. Garcia also argues that "under the doctrine of ejusdem generis, when a legislature sets out a specific detailed list followed by a general catch-all phrase, the general phrase is limited to the same types of things that are listed more specifically. Competitive, fee-

Rem.Code Ann. § 75.001; *Homoky*, 294 S.W.3d at 817; *Howard*, 122 S.W.3d at 410 n. 2; *Kopplin*, 869 S.W.2d at 441; *see also Garcia*, 2002 WL 1752219, at *2–3.

## II. Garcia's Allegations

We next address whether Garcia's allegations, if proven, would establish a waiver of sovereign immunity as measured by the duty of care UT Health owed to a trespasser under the Recreational Use Statute.

### A. Standards of Review

The Recreational Use Statute states that it "shall not limit the liability of an owner ... of real property who has been grossly negligent or has acted with malicious intent or in bad faith." Tex. Civ. Prac. & Rem.Code Ann. § 75.002(d). Garcia does not allege or argue on appeal that UT Health acted with malicious intent or in bad faith. We therefore analyze Garcia's claim under standards applicable to gross negligence.

The Texas Supreme Court and the Texas Legislature have defined gross negligence as an act or omission involving the subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others.

*Shumake*, 199 S.W.3d at 287 (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 21 (Tex.1994), *Mo. Pac. Ry. Co. v. Shuford*, 72 Tex. 165, 10 S.W. 408, 411 (1888), and Tex. Civ. Prac. & Rem.Code Ann. § 41.001(11)). The Texas Supreme Court has applied this definition to the Recreational Use Statute. *Shumake*, 199 S.W.3d at 287 (citing *Miranda*, 133 S.W.3d at 225).

 "[G]ross negligence involves two components: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246 (Tex.1999) (citing *Moriel*, 879 S.W.2d at 23). "[A] landowner can be liable for gross negligence in creating a condition that a recreational user would not reasonably expect to encounter on the property in the course of the permitted use." *Shumake*, 199 S.W.3d at 288.

### B. Garcia's Pleadings

based sports are not the equivalent of hunting, fishing, boating and biking, nor skating, Frisbee, and walking the dog. The former require organization, planning, supervision, fee collection, maintenance and repairs. The latter activities do not." We note that Garcia refers to "Frisbee" rather than the statute's use of the term "disc golf" in making this argument. Disc golf is a game in which players throw a flying disc into a basket or at a target. According to the Professional Disc Golf Association, the object of the game is to traverse a course from beginning to end in the fewest throws of the disc. See Professional Disc Golf Association, A Guide to Disc Golf from the PDGA, http://www.pdga.com/introduction (last visited July 21, 2011). Many cities have made disc golf courses available for public use in city parks. *See id.* One

of the largest organized disc golf team tournaments in the world is held annually in Austin, Texas. *See* Circular Productions, Texas Disc Golf Teams Championships, http://circularproductions.com/texas_teams.html (last visited July 21, 2011). Conceivably, disc golf in this context would "require organization, planning, supervision, fee collection, maintenance and repairs," and its inclusion in the list undermines Garcia's argument that "[w]hat distinguishes competitive sports from the protected activities listed in the current version of the Recreational Use Statute is the fact that those governmental providers of such competitive sports also provide for competitive leagues, equipment, fields or courts, and, most importantly, maintenance of such fields and courts."

 To determine whether Garcia's claims fall within the applicable waiver of sovereign immunity for grossly negligent conduct, we begin with the pleadings. *Miranda,* 133 S.W.3d at 226. The pleader has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Id.* Whether the pleader has met this burden is a question of law that we review *de novo. Id.* We construe the pleadings liberally and look to the pleader's intent. *Id.*

Garcia alleges in his first amended petition that "[UT Health] . . . owed [Garcia] a duty to exercise ordinary care to keep the premises, including the volleyball court, in reasonably safe condition" and that "[UT Health] knew that, left unattended, the condition of the volleyball court would likely deteriorate and expose players to an unreasonable risk of injury." Garcia also alleges that "[i]n the alternative, [UT Health] had a duty to provide adequate warning to its members and guests, including [Garcia], of the risk to which he was exposed on the day of the accident." He states that "as a direct result of [UT Health's] negligence, [Garcia] suffered multiple injuries to his foot, including a severe laceration, dislocated toe, and a torn ligament."

 Garcia makes no express allegation regarding gross negligence. The allegation that UT Health's failure to maintain or warn caused an "unreasonable risk of injury"—even if it is true—does not constitute an allegation that UT Health (1) caused an objectively extreme degree of risk, considering the probability and magnitude of potential harm; or (2) was consciously indifferent to any alleged capacity to inflict serious injury. *Compare Flynn,* 228 S.W.3d at 659–60 (plaintiff sued landowner after oscillating sprinkler knocked her off her bike; "conclusory" allegation that landowner "knew that the use of the sprinkler . . . posed a risk of serious injury to others" but that the landowner was "grossly negligent in ignoring and creating that risk" was not sufficient "to meet the standard imposed by the recreational statute"), and *Homoky,* 294 S.W.3d at 817 (plaintiff sued landowner for injury sustained after tripping in golf course clubhouse; allegations that (1) placement of wood was unreasonably dangerous; (2) landowner knew or should have known about the dangerous condition that created an unreasonable risk of harm; and (3) landowner failed to exercise ordinary care in reducing or eliminating the danger were not sufficient to state a premises liability claim under the recreational use statute), *with Shumake,* 199 S.W.3d at 281–82, 288 (plaintiffs' daughter drowned after being caught in river undertow and sucked into a man-made culvert; allegations that (1) culvert became concealed and undertow was created when river's waters were high; (2) landowner received reports of other recent near-drownings involving the same area, but failed to make the culvert safer or warn of the danger; and (3) failure to do so involved an extreme degree of risk, considering the probability and magnitude of potential harm to swimmers were sufficient to state a premises liability claim under the Recreational Use Statute).[7] We

---

7. UT Health argued in its plea and motion that its alleged failure to "maintain, monitor, inspect, and respond to complaints" regarding the sand volleyball courts constitutes a "discretionary function" for which there is no waiver of sovereign immunity under the Texas Tort Claims Act. We conclude that the alleged acts or omissions are not a product of discretionary functions protected under the Texas Tort Claims Act. *See Flynn,* 228 S.W.3d at 657–58 (one test for determining whether questioned conduct involves a protected discretionary function "distinguishes the design of public works, for which there is immunity, from their maintenance, for which there is not immunity;" decisions regarding

sustain UT Health's first issue to this extent, and we need not address UT Health's remaining contentions on appeal.

■■■ If a plaintiff's pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, the issue is one of pleading sufficiency. *Miranda,* 133 S.W.3d at 226–27; *Brown,* 80 S.W.3d at 558–59. A plaintiff should be afforded the opportunity to amend his pleadings in such an event, so long as the pleadings do not affirmatively negate the existence of jurisdiction. *Miranda,* 133 S.W.3d at 226–27; *Brown,* 80 S.W.3d at 558–59. Garcia's allegations do not rise to the level of gross negligence, but they do not affirmatively negate the possibility that UT Health's actions constituted gross negligence. Accordingly, we remand this case to the trial court to afford Garcia an opportunity to amend his pleadings.

## CONCLUSION

We sustain UT Health's first issue on appeal to the extent that we hold (1) the Recreational Use Statute applies to this case; and (2) Garcia's pleadings do not state sufficient facts to affirmatively demonstrate the trial court's jurisdiction under that statute. We reverse the trial court's "Order Denying Defendant's Motion to Dismiss for Lack of Jurisdiction," and we remand this case to the trial court for proceedings consistent with this opinion.

where and when to spray water from underground sprinkler system was operational or maintenance-level decision rather than protected policy formulation).