Opinion issued October 28, 2014



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00976-CV

————————————

**TABITHA HENRY, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF KYLIE LAMPSON AND AS NEXT OF FRIEND OF ASHLEY HENRY, ZACHARY HENRY AND HANNAH HENRY, Appellants**

**V.**

**THE CITY OF ANGLETON, Appellee**

---

### On Appeal from the 239th District Court
### Brazoria County, Texas
### Trial Court Case No. 70733

---

## MEMORANDUM OPINION

This is an accelerated appeal from the trial court's order granting the City of Angleton's plea to the jurisdiction. Tabitha Henry sued the City after her 11 year old daughter, Kylie Lampson, died from complications of near-drowning in a

swimming pool owned by the City.  We hold that the trial court properly granted the City's plea to the jurisdiction.

## Background

The City owns and operates the Angleton Recreation Center ("Rec Center") through the Angleton Better Living Corporation.  The Rec Center consists of a fitness facility, gymnasium, meeting rooms, and a swimming pool known as the Natatorium.  The Natatorium functions as an indoor and outdoor pool and has zero-depth entry, slides, tipping buckets that fill up with water and pour into the pool, and a lazy river.

Tabitha took her four children to the pool.  At one point, Kylie was seen lying face down in the water.  After the lifeguard pulled Kylie from the water and attempted to resuscitate her, Kylie was taken to the hospital.  Kylie died seven days later from "complications of near-drowning."  A video shows that Kylie was face down in the water for approximately seven minutes before the lifeguard took action.

Henry, individually, on behalf of the estate of Kylie, and as next friend of her three other minor children, sued the City to recover wrongful death, survival, and bystander damages.  Henry alleged that the City's operation of the Natatorium was a proprietary function because the Natatorium includes amusement features such as slides, tipping buckets, and a lazy river.  *See* TEX. CIV. PRAC. & REM. CODE

2

ANN. § 101.0215(b) (West Supp. 2014) (designating "amusements" as proprietary). Henry also alleged negligence, gross negligence, and premises defect.

After special exceptions, the trial court ordered Henry to replead and include "specific facts that demonstrate a cause of action or causes of action against the City of Angleton for which its immunity from suit is waived by the Texas Tort Claims Act." In her First Amended Petition, Henry also alleged that the design of the Natatorium constituted an unreasonably dangerous condition and that the City "failed to install elevated lifeguard chairs which are industry standard and required by the requisite codes."

The City filed its plea to the jurisdiction "seeking dismissal . . . because there is no cause of action alleged against the City for which immunity is waived by the Tort Claims Act." Henry filed a response supported by evidence, including the deposition transcript of the City manager, Michael Stoldt, and a picture of a lifeguard chair used at the Natatorium. After a hearing, the trial court granted the plea and dismissed Henry's suit with prejudice.

**Plea to the Jurisdiction**

A plea to the jurisdiction based on governmental immunity is a challenge to the trial court's subject matter jurisdiction. *See City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133

S.W.3d 217, 225–26 (Tex. 2004). Whether the trial court has subject matter jurisdiction is a question of law. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). We therefore review a trial court's ruling on a plea to the jurisdiction de novo. *Id.*

When a plea to the jurisdiction challenges the sufficiency of a plaintiff's jurisdictional pleadings, we must determine whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction. *See Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.*; *Smith v. Galveston Cnty.*, 326 S.W.3d 695, 697–98 (Tex. App.—Houston [1st Dist.] 2010, no pet.). "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend its petition." *Smith*, 326 S.W.3d at 698 (citing *Miranda*, 133 S.W.3d at 227). If the pleadings neither affirmatively demonstrate nor negate jurisdiction, "it is an issue of pleading sufficiency and the plaintiff should be given an opportunity to amend the pleadings." *Kirwan*, 298 S.W.3d at 622 (citing *Miranda*, 133 S.W.3d. at 226–27).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we "'consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised,' even where those facts may implicate the merits of the cause of action." *Id.* (quoting *Miranda*, 133 S.W.3d. at 227). The

plea to the jurisdiction standard mirrors that of a traditional motion for summary judgment. *Miranda*, 133 S.W.3d at 228*; Ross v. Linebarger, Goggan, Blair & Sampson, L.L.P.*, 333 S.W.3d 736, 744 (Tex. App.—Houston [1st Dist.] 2010, no pet.). When reviewing the evidence, we must "'take as true all evidence favorable to the nonmovant' and 'indulge every reasonable inference and resolve any doubts in the nonmovant's favor.'" *Kirwan*, 298 S.W.3d at 622 (quoting *Miranda*, 133 S.W.3d. at 228). If the evidence creates a fact issue as to the jurisdictional issue, then the fact-finder will decide that issue. *Id.* (citing *Miranda*, 133 S.W.3d. at 227–28). "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Miranda*, 133 S.W.3d. at 228.

## Discussion

In its plea, the City sought dismissal based on Henry's pleadings because Henry failed to allege facts that demonstrated a waiver of immunity under the Texas Tort Claims Act. Henry challenges the trial court's order granting the plea on two grounds: (1) the trial court erred in concluding that the City's operation of the Natatorium is a governmental rather than a proprietary function and (2) the trial court erred in concluding that Henry failed to allege facts to bring her claims within the waivers of immunity for use of tangible personal property and premises liability.

5

## A.     Governmental Function

In her first issue, Henry contends that the trial court erred in finding that the City's operation of the Natatorium is a governmental rather than a proprietary function.    According to Henry, the operation of the Natatorium is proprietary because it is an "amusement" that charges an entry fee and whether the Natatorium was an "amusement" under section 101.0215(b) of the Texas Tort Claims Act ("TTCA") or a "generic pool" was a fact issue for the jury to resolve.

A city's immunity from suit for a tort claim may depend on whether its actions are characterized as governmental or proprietary functions. *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex.2006).  A city is immune for torts committed in the performance of its governmental functions. *Id.*   But a city receives no protection from suit for torts committed in the performance of its proprietary functions. *Id.*

Section 101.0215 of the TTCA designates certain functions as governmental or proprietary for tort claims purposes.   TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a), (b).    The Legislature designated recreational facilities, including swimming pools, as governmental functions.  *Id.* § 101.0215(a)(23) ("recreational facilities, including but not limited to swimming pools, beaches, and marinas" are governmental functions).    But "amusements owned and operated by the municipality"  are  proprietary.    *Id.* § 101.0215(b)(2).    Importantly, section

6

101.0215(c) states that proprietary functions do not include those governmental activities enumerated under section 101.0215(a). *Id.* § 101.0215(c).

Henry argues that the Natatorium is an amusement because it has "a play structure, water blasters, water buckets, water curtains, [and] a lazy river." But swimming pools are expressly designated as governmental under section 101.0215(a). *Id.* § 101.0215(a)(23). Accordingly, they cannot also be proprietary. *See id.* § 101.0215(c) ("The proprietary functions of a municipality do not include those governmental activities listed under Subsection (a)."); *City of Houston v. Downstream Envtl., L.L.C.*, 01-12-01091-CV, 2014 WL 2619072, at *5 (Tex. App.—Houston [1st Dist.] June 12, 2014, no pet.) ("[W]e have no discretion to determine that a municipality's action is proprietary if it has been designated as a governmental function by the Tort Claims Act.").

While the Natatorium incorporates modern features designed to enhance the user's experience and these features distinguish the Natatorium from a generic pool, "the introduction of a proprietary element into an activity designated by the Legislature as governmental does not serve to alter its classification." *City of Texarkana v. City of New Boston*, 141 S.W.3d 778, 784 n.3 (Tex. App.—Texarkana 2004, pet. denied), *abrogated on other grounds by Tooke v. City of Mexia*, 197 S.W.3d 325, 338–42, n.60 (Tex. 2006); *City of Plano v. Homoky*, 294 S.W.3d 809, 815 (Tex. App.—Dallas 2009, no pet.) (quoting *City of San Antonio v.*

*Butler*, 131 S.W.3d 170, 178 (Tex. App.—San Antonio 2004, pet. denied) ("In considering whether the City was engaged in a governmental or proprietary function, a plaintiff may not 'split various aspects of [a City's] operation into discrete functions and recharacterize certain of those functions as proprietary.'"). Thus, the Natatorium's additional features do not change its designation as a governmental function. *See Homoky*, 294 S.W.3d at 815 (holding city-owned golf course is governmental function despite evidence that clubhouse, with restaurant operating within, was located on premises).

Henry also contends the Natatorium is proprietary because it is "reserved for those who are willing to pay monthly membership fees or daily fees for use." In support, Henry offered the deposition testimony of Michael Stoldt, the city manager, to prove that users paid to use the Natatorium. But a governmental entity's ability to charge fees and make a profit does not in itself transform a governmental function into a proprietary function. *See Butler*, 131 S.W.3d at 178 (existence of a profit motive does not transform government function into proprietary conduct); *Texas River Barges v. City of San Antonio*, 21 S.W.3d 347, 356–57 (Tex. App.—San Antonio 2000, pet. denied) (regulation of "dinner, tour, and taxi barges" on river was within government function even though City contracted for sale of dinner and tours which would produce profits for city).

Accordingly, we conclude that the City's operation of the Natatorium is a governmental function.

We overrule Henry's first issue.

## B. No waiver of immunity under the TTCA

In her second issue, Henry contends that she alleged facts sufficient to bring her claims within the TTCA's waivers of immunity for (1) "misuse/non-use of tangible personal property" and (2) premises liability.

### 1. Use of tangible personal property

Henry contends that she pleaded a claim for misuse of tangible personal property within TTCA section 102.021(2) because she alleged that the Natatorium's lifeguard misused the lifeguard chairs. Section 101.021(2) provides that a governmental unit is liable for personal injury or death caused by the use of tangible personal property "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (West 2011).

To fall within the waiver of section 101.021(2), the plaintiff's injury "must be proximately caused by the condition or use of tangible property." *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). "The requirement of causation is more than mere involvement," and "[p]roperty does not cause injury if it does no more than furnish the condition that makes the

9

injury possible." *Id.*; *see Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001). This is not to say that the tangible property has to have physically injured the plaintiff in order for proximate cause to exist. *See Bossley*, 968 S.W.2d at 343. But, the Texas Supreme Court requires a causal nexus between the use of the property and the plaintiff's injury. *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003); *see Bossley*, 968 S.W.2d at 342–43 (incidental involvement of property is insufficient to establish waiver, and property does not "cause" the injury if it simply furnishes the condition that makes the injury possible); *Univ. of Tex. Med. Branch Hosp. at Galveston v. Hardy*, 2 S.W.3d 607, 609 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (there must be a "direct and immediate relationship" between the injury and the "use" of the property).

Henry contends that she alleged a "proper misuse/non-use of tangible personal property—i.e. the lifeguard chairs." Her First Amended Petition states:

> [T]he design of the Natatorium constituted an unreasonably dangerous condition. Specifically the Natatorium was designed to place lifeguard stations in a manner where the Natatorium cannot be fully viewed. Moreover, Defendant failed to install elevated lifeguard chairs which are industry standard and required by the requisite codes.

But nowhere does the petition allege facts to establish a nexus between the lifeguard stations or chairs and Kylie's injury. Henry failed to allege how the Natatorium lifeguard stations or chairs contributed to the incident, i.e., that the

stations or chairs were the "instrumentality" of Kylie's injury. In other words, Henry nowhere alleged that Kylie's injury would not have occurred if the stations or chairs had been higher or located differently. *See Miller*, 51 S.W.3d at 588 (treatment may have furnished condition that made injury possible, but treatment did not hurt him, make him worse, or actually cause his death); *Dimas v. Tex. State Univ. Sys.*, 201 S.W.3d 260, 267 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("[A]lthough malfunctioning light timers may have caused the area near [the scene] to be dark, thus furnishing the condition that made the attack possible, this condition does not establish the requisite causal nexus . . . ."); *Fryman v. Wilbarger Gen. Hosp.*, 207 S.W.3d 440, 441–42 (Tex. App.—Amarillo 2006, no pet.) (sovereign immunity not waived where hospital grounds were simply location of assault, pleadings do not show hospital grounds caused assault, and plaintiff complained about failure to use or, in effect, non-use of property). Because Henry failed to allege facts demonstrating proximate causation, Henry failed to establish that immunity was waived based on the use of personal tangible property.[1]

---

[1] Although Henry adduced evidence showing the location and design of the lifeguard chairs (a photograph of the chair), this is insufficient to raise a fact issue on causation. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004) (we consider evidence submitted by the parties when plea to jurisdiction challenges jurisdictional facts).

11

## 2. Premises Defect

The TTCA includes a limited waiver of the state's immunity from suits alleging personal injury or death caused by premises defects. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), 101.022 (West 2011). In premises-defect cases generally, the governmental unit owes "only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises" in which case the duty owed is that owed to an invitee. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a); *see City of Irving v. Seppy*, 301 S.W.3d 435, 441 (Tex. App.—Dallas 2009, no pet.). However, a different rule applies in a premises liability case in which the plaintiff was injured while engaging in a recreational activity within the scope of the Recreational Use Statute. *Miranda*, 133 S.W.3d at 225 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.058 (West 2011); *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 75.001–75.003 (West 2011 & West Supp. 2014). In such a case, the Recreational Use Statute controls over the Tort Claims Act. TEX. CIV. PRAC. & REM. CODE ANN. § 75.003(g) (West Supp. 2014) (chapter 75 controls over chapter 101 to extent chapter 75 limits liability of governmental unit under circumstances in which governmental unit would be liable under chapter 101); *id.* § 101.058 (West 2011) (same).

When injury or death results on government-owned, recreational land, the Recreational Use Statute limits the governmental unit's duty to that owed by a

landowner to a trespasser.  TEX. CIV. PRAC. & REM. CODE ANN. § 75.002(c)(2), (f) (West 2011) (defining duty as that owed to trespasser); *see State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006).  Thus, when applicable, the Recreational Use Statute elevates the plaintiff's burden to require a showing of gross negligence, malicious intent, or bad faith.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 75.002(d); *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 659 (Tex. 2007).

The Recreational Use Statute applies if a plaintiff is engaged in "recreation" at the time of the injury.  *City of Bellmead v. Torres*, 89 S.W.3d 611, 613–14 (Tex. 2002).  The statute provides a nonexclusive list of activities that constitute "recreation," including swimming and "other water sports."  TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(3)(C), (K).  Because it is undisputed that Kylie was swimming at the time of the incident, we hold that the Recreational Use Statute applies in this case.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(3)(C).  Accordingly, Henry must allege that Kylie's injury arose from gross negligence, malicious intent, or bad faith.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 75.002(d).

Henry did not allege that the City acted with malicious intent or in bad faith; we thus analyze only whether Henry alleged sufficient facts to support a gross negligence claim.  Gross negligence is "an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the

rights, safety, or welfare of others." *Shumake*, 199 S.W.3d at 287 (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 21 (Tex. 1994)). Gross negligence, as applied under the Recreational Use Statute, involves two components: (1) viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceeds in conscious indifference to the rights, safety, or welfare of others. *See Miranda*, 133 S.W.3d at 225. When reviewing the second subjective component, "what separates ordinary negligence from gross negligence is the defendant's state of mind; in other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *Louis.–Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246–47 (Tex. 1999); *see also City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008) (holding that "actual knowledge" element of a premises defect cause of action requires knowledge that the dangerous condition existed at the time of the accident).

The only premises defect alleged in Henry's petition relates to the lifeguard chairs:

> [T]he design of the Natatorium constituted an unreasonably dangerous condition. Specifically, the Natatorium was designed to place lifeguard stations in a manner where the Natatorium cannot be fully viewed. Moreover, Defendant failed to install elevated lifeguard

chairs which are industry standard and required by the requisite codes. This conduct is so reckless that it constitutes an intentional conduct of ignoring a known extreme risk of harm or death.

Knowledge of the dangerous condition's existence is an element of gross negligence claims. *See Miranda*, 133 S.W.3d at 225. Here, Henry alleged that the City's failure to install elevated lifeguard stations or chairs amounted to "ignoring a known extreme risk of harm or death," but failed to allege any facts establishing that the City had actual knowledge or was aware of any risk. Henry alleged only that the City's failure to install different lifeguard stations or chairs amounted to "ignoring a known extreme risk," without first alleging any facts that the City knew of the alleged risk. Henry therefore failed to allege facts demonstrating that the City knew of the allegedly dangerous placement or design of the lifeguard stations or chairs before Kylie's injury, or that the City was aware of any extreme risk. Accordingly, we conclude that Henry failed to allege facts demonstrating gross negligence with respect to her claims that are based on the lifeguard stations or chairs, which was the only premises defect Henry alleged.[2] *See Flynn*, 228

---

[2] None of the remaining allegations in Henry's petition relate to a premises defect. Henry alleges that the City was negligent in many respects: failing to train lifeguards, failing to supervise patrons, and failing to have an adequate number of lifeguards on duty. Henry also contends that the lifeguard's failure to promptly react to seeing Kylie face down was "gross negligence." But these allegations do not relate to the property and therefore cannot state a premises defect claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (TTCA waives immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.").

15

S.W.3d at 659–60 ("conclusory" allegation that appellee "knew that the use of the sprinkler . . . posed a risk of serious injury to others" but that appellee was "grossly negligent in ignoring and creating that risk" was insufficient "to meet the standard imposed by the recreational statute"); *City of El Paso v. Collins*, No. 08-12-00243-CV, 2013 WL 6665090, at *6, -- S.W.3d -- (Tex. App.—El Paso Dec. 18, 2013, no pet.) (immunity not waived where plaintiffs alleged that City had knowledge of pool's defective condition because they did not allege that City was "aware of the extreme risk" to children); *Univ. of Tex. Health Sci. Ctr. at Hous. v. Garcia*, 346 S.W.3d 220, 228 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (allegation that university "knew that, left unattended, the condition of the volleyball court would likely deteriorate and expose players to an unreasonable risk of injury" insufficient to "affirmatively demonstrate the trial court's jurisdiction"); *Homoky*, 294 S.W.3d at 817–18 (appellant's allegations, including that landowner "knew or should have known about the dangerous condition . . . [that] created an unreasonable risk of harm," failed to satisfy pleading requirements for gross negligence); *Biermeret v. Univ. of Tex. Sys.*, No. 02-06-240-CV, 2007 WL 2285482, at *6 (Tex. App.—Fort Worth Aug. 9, 2007, pet. denied) ("[B]ecause no pleadings or jurisdictional evidence exists that [appellee] possessed actual or constructive knowledge . . . that on the date in question [the floor]

16

actually had become wet and slick prior to [appellant's] fall, [appellant] has not shown that if [appellee] were a private person it would be liable to him.").

Accordingly, we conclude that Henry failed to allege facts to bring her claims within the waivers of the Recreational Use Statute and the TTCA and hold that the trial court did not err in granting the City's plea to the jurisdiction.

We overrule Henry's second issue.

## Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Justices Massengale, Brown, and Huddle.