**Reversed and Rendered and Majority and Dissenting Opinions filed March 21, 2013.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-12-00620-CV

### THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, Appellant

### V.

### RUSSELL DESOTO AND JUDY DESOTO, Appellees

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2009-61332**

## M A J O R I T Y   O P I N I O N

Russell DeSoto and Judy DeSoto filed a negligence suit against The University of Texas Health Science Center at Houston ("UTHSCH") for injuries a UTHSCH doctor allegedly caused to Judy. UTHSCH moved for dismissal of the suit via a plea to the jurisdiction, arguing the DeSotos' claims do not fall within the

limited waiver of sovereign immunity afforded under the Texas Tort Claims Act ("TTCA"). The trial court denied UTHSCH's plea.

On interlocutory appeal, we consider whether the TTCA waives sovereign immunity for claims stemming from injuries caused by a state surgeon's purportedly negligent failure to properly address complications caused by the non-negligent use of non-defective tangible personal property. We hold that the TTCA does not waive sovereign immunity for such claims and reverse and render judgment dismissing the DeSoto's claims against UTHSCH for want of jurisdiction.

## I. BACKGROUND

On October 3, 2007,[1] Judy underwent anterior-approach spinal surgery, meaning the surgeon accessed her spine through an incision in her abdomen as she lay facing upward. The surgery was performed by Amir S. Malik, M.D., a board certified neurosurgeon employed by UTHSCH. Dr. Malik requested Phillip Adams, M.D., a board certified cardiovascular surgeon not employed by UTHSCH, to attend the surgery and provide the abdominal opening, retraction of organs to expose the spine, and closure of the opening.

After Dr. Adams had provided the abdominal opening and retracted organs, and while Dr. Malik was performing the spinal surgery, Dr. Adams noticed a "nick" on Judy's left ureter (the tube which carries urine from the kidney to the bladder), causing a fluid leak. According to Dr. Malik, he relied on Dr. Adams to remedy the ureter injury and asked him if a urologist should be consulted. Without consulting a urologist, Dr. Adams sutured the ureter. After the surgery was

---

[1] All dates mentioned in this opinion occurred in 2007 unless specified otherwise.

2

complete, Dr. Adams removed the retraction instruments and closed the abdominal opening.

On October 4, Dr. Malik met with Judy and noticed a large amount of urine draining from a surgical port. Dr. Malik ordered a urology consult. Steven E. Canfield, M.D., the consulting urologist, examined Judy and placed a stent in her ureter. On October 11, Dr. Malik discharged Judy.

Judy was admitted to a rehabilitative center where she was under the care of new physicians. While a patient at the rehabilitative center, Judy developed internal bleeding, which caused a hematoma to form and compress her left ureter.[2] Initially, the internal bleeding was detectable because bruising appeared on Judy's body. However, the bruising was no longer visible when Judy was discharged from the rehabilitative center sometime in October.

On October 31, Dr. Canfield removed the stent from Judy's ureter. The same day, Dr. Canfield drafted a letter to Dr. Malik in which Dr. Canfield explained that Judy complained about several recent episodes of extreme abdominal and back pain. On November 27, Judy met with Dr. Malik and reported back pain and fullness on the left side of her abdomen.

Judy later met with her general practitioner, who discovered the hematoma and referred Judy to urologist Robert A. Bass, M.D. Dr. Bass determined that the hematoma pressed on the ureter, causing urine to leak interiorly and obstructing Judy's kidney. This condition caused Judy's kidney to become nonfunctioning, and necessitated Dr. Bass to remove it.

---

[2] The DeSotos' expert opined that the internal bleeding came from the surgical site. Nevertheless, the DeSotos admit that this bleeding did not stem from Dr. Malik's negligent use of a surgical instrument.

3

The DeSotos filed suit against UTHSCH, alleging that Dr. Malik committed the following negligent acts:

- Failure to recognize the obvious and palpable presence of a large mass following surgery in [Judy's] left lower abdomen and thus failure to immediately evacuate the blood or fluid collection percutaneously or surgically;

- Failure to obtain the consult of an appropriate specialist;

- Failing to follow up with his patient or to respond to repeated attempts by her to communicate with him;

- Performing the surgery in an unskilled and inattentive fashion;

- Failure to realize that when a stent placed because of the urologic injury was removed, the significant pain nonetheless continued and the palpable mass remained.[3]

The DeSotos retained Dr. Bass as their medical expert. In sum, Dr. Bass opined that Dr. Malik erred by (1) failing to order a urology consult when he learned of the ureter injury, (2) failing to use a stent to repair the ureter injury, (3) failing to supervise Dr. Adams properly, (4) delegating responsibility for the ureter injury to Dr. Adams, (5) failing to monitor Judy's recovery following the surgery despite knowing of her complications, and (6) failing to identify and treat the hematoma. As discussed below, the DeSotos do not claim that Dr. Malik or Dr. Adams negligently used any surgical instruments.

UTHSCH filed a plea to the jurisdiction, and later a supplemental plea to the jurisdiction, contending the DeSotos failed to plead a claim for which UTHSCH's sovereign immunity is waived and presenting evidence which purportedly establishes that Judy's injuries were not caused by the negligent use of any instrumentality. The DeSotos filed a response to the plea and a post-

---

[3] The DeSotos asserted several other claims, including claims against Dr. Canfield. However, the DeSotos unequivocally state in their brief that they "no longer assert" these claims.

submission memorandum.  The trial court denied the plea, and UTHSCH filed this interlocutory appeal.[4]

## II. SOVEREIGN IMMUNITY

In a single issue, UTHSCH contends the trial court erred by denying the plea to the jurisdiction.

## A.  Standard of Review

If a governmental unit has immunity from suit, the trial court lacks subject matter jurisdiction.  *Rusk State Hosp. v. Black*, No. 10-0548, --- S.W.3d ---, 2012 WL 3800218, at *5 (Tex. Aug. 31, 2012).  Whether a court has subject matter jurisdiction is a question of law we review de novo.  *Tex. Dep't of Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004).  When a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction.  *Id.* at 226.  We should glean the plaintiff's intent and construe the pleadings liberally in favor of jurisdiction.  *Id.*

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised.  *Id.* at 227.  If the evidence creates a fact question regarding the jurisdictional issue, then a plea to the jurisdiction should not be granted, and the fact issue must be resolved by the fact finder.  *Id.* at 227–28.  However, if the relevant evidence fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.  *Id.* at

---

[4] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West. Supp. 2012) (permitting interlocutory appeal from order granting or denying government's plea to the jurisdiction).

228. We take as true all evidence favorable to the plaintiff and indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Id.*[5]

## B. Analysis

The TTCA provides a limited waiver of sovereign immunity for

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 2011).

The parties agree that subsection (2) of section 101.021 is the relevant immunity-waiver provision for purposes of this litigation. UTHSCH argues that the DeSotos' claims do not meet the requirements of subsection (2) because the evidence conclusively establishes that Judy's injuries were not caused by the negligent use of tangible personal property. UTHSCH contends the DeSotos' claims are actually based on Dr. Malik's negligent failure to use proper medical judgment in treating Judy's ureter injury and post-surgery complications and in supervising and delegating duties to Dr. Adams—claims for which there is no waiver of immunity under subsection (2). *See, e.g.*, *Tex. Dep't of Crim. Justice v.*

---

[5] The DeSotos incorrectly assert that the de novo standard of review does not apply when a plea to the jurisdiction involves an evidentiary challenge to jurisdictional facts. *See Miranda*, 133 S.W.3d at 228 (explaining evidentiary challenge to jurisdictional facts is reviewed de novo).

6

*Miller*, 51 S.W.3d 583, 588 (Tex. 2001); *Univ. of Tex. M.D. Anderson Cancer Center v. King*, 329 S.W.3d 876, 880–81 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

The DeSotos agree that their claim is not based upon any negligent use of tangible personal property, explaining in their brief as follows:

> The occurrence of the initial injuries arose out of the use of instruments, but not the mis-use. However, the instruments were directly involved in an actionable injury, the loss of the patient's kidney. But for the initial non-negligent infliction of wounds with surgical instruments and the ensuing negligent omissions of Dr. Malik the loss of the kidney would not have occurred. The tangible property was therefore directly involved in an actionable cause of action for the loss of an organ and the pain associated therewith.[6]

By this, the DeSotos interpret subsection (2) to mean that an injury caused by a non-negligent use of tangible personal property but exacerbated by the physician's failure to take appropriate remedial actions falls within the immunity waiver of the subsection.

The DeSotos correctly note that courts have often recognized immunity is waived under subsection (2) by a state employee's "use or misuse" of tangible personal property. *See, e.g.*, *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996) ("[T]he issue is whether [the government's] administration of an oral form of [a drug], rather than an injectionable drug, constitutes use or misuse of tangible personal property under the terms of the [TTCA]."); *Univ. of Tex. Med. Branch at Galveston v. Malveaux*, No. 14-09-00878-CV, 2010 WL 2968021, at *3

---

[6] It appears the DeSotos do not contend that Dr. Malik's and Dr. Adams's negligent use of surgical instruments caused the ureter injury or post-operative internal bleeding because the evidence does not support such a finding and/or such complications are normal for this type of surgery and do not by themselves establish acts or omissions below the applicable standard of care.

7

(Tex. App.—Houston [14th Dist.] July 29, 2010, pet. denied) (mem. op.) (recognizing immunity may be waived for claims involving "use or misuse of property"). The DeSotos argue that reference to both "use" and "misuse" is significant because "misuse" connotes a *negligent* use but "use" does not. Nevertheless, the DeSotos do not cite any caselaw supporting the proposition that an injury arising from a state employee's non-negligent use of non-defective personal property gives rise to the waiver of immunity under subsection (2).[7] Instead, the DeSotos rather candidly admit there is no support—aside from their interpretation of subsection (2)—for this proposition: "[S]tanding on no certain or concrete premise, except the statute as written, we submit what we think could make the law fair and evenly dispensed."

Looking to the statute, the DeSotos assert that the following language in subsection (1) is an express negligence requirement: "property damage, personal injury, and death *proximately caused by the wrongful action or omission or the negligence* of an employee." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1). According to the DeSotos, the absence of such language from subsection (2) means that the "use of tangible personal . . . property" need not be negligent for the

---

[7] Regarding the phrase "use and misuse," "misuse" may refer to the negligent use of personal property, such as a police officer negligently firing a gun, and "use" may refer to the non-negligent use of defective personal property, such as providing a deficient football uniform. *Compare City of San Augustine v. Parrish*, 10 S.W.3d 734, 738 (Tex. App.—Tyler 1999, pet. dism'd w.o.j.) (officer negligently fired gun), *with Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 300 (Tex. 1976) (school provided deficient uniform); *see also Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 31–32 (Tex. 1983) (holding predecessor to subsection (2) does not require allegation that personal property is defective when plaintiff alleges the property was "wrongly used"). In both situations, negligence is attached to use of the personal property, which is not alleged in the present case.

When "use" refers to the non-negligent use of defective personal property, the claim seems indistinguishable from a claim based on the "condition" of the property (and perhaps is). *See Univ. of Tex M.D. v. Baker*, --- S.W.3d ---, 14-11-01307-CV, 2012 WL 6014608, at \*5 & n.9 (Tex. App.—Houston [14th Dist.] Dec. 4, 2012, no pet. h.) (noting that use-of-defective-personal-property cases "may be better understood as 'condition' cases").

subsection to apply, even when the property is not defective. *Id.* § 101.021(2). We disagree.

Subsection (2) does not expressly include the same negligence requirement as subsection (1). However, waiver of immunity exists under subsection (2) only "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* A private surgeon would not be held liable for an injury caused by his non-negligent use of non-defective personal property. *See Jackson v. Axelrad*, 221 S.W.3d 650, 655 (Tex. 2007) (explaining that "physician-of-ordinary-prudence standard" is not a strict-liability standard). Instead, the private surgeon's liability would stem from his subsequent failure to use proper medical judgment in treating the injury caused by his non-negligent use of personal property. As noted above, the TTCA does not waive immunity for such negligence. *See Miller*, 51 S.W.3d at 588; *King*, 329 S.W.3d at 880–81.

We acknowledge that "use" is broadly defined as "to put or to bring into action or service; to employ for or apply to a given purpose." *Miller*, 51 S.W.3d at 588. However, the basic purpose of section 101.021 is to waive immunity "only to a limited degree." *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). To this end, the supreme court has held that, for the waiver of immunity under subsection (2) to apply, the plaintiff's injury "must be proximately caused by the condition or use of tangible property." *Id.* "The requirement of causation is more than mere involvement," and "[p]roperty does not cause injury if it does no more than furnish the condition that makes the injury possible." *Id.*; *see also Miller*, 51 S.W.3d at 588 (holding it is insufficient for waiver purposes "that some property is merely involved" and concluding the property used might have furnished condition that made injury possible, but did not harm patient by itself). There must be a negligent act or

9

omission that proximately caused the injury for negligence liability to exist. Negligence liability does not exist if the injury is proximately caused by a non-negligent act or omission. *See Wansey v. Hole*, 379 S.W.3d 246, 248 (Tex. 2012) ("A negligence finding requires a duty, breach, and damages proximately caused by that breach."); *Salcedo*, 659 S.W.2d at 33 ("[T]he proximate cause of the damages for death or personal injury [under predecessor statute to subsection (2)] must be the negligence or wrongful act or omission of the [state employee]."); *see also Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841, 848 (Tex. App.— San Antonio 1989, writ denied) ("[Because] acts complained of were non-negligent, we have no occasion to further inquire into a question of proximate cause.").

Under the DeSotos' interpretation of subsection (2), even the most skillful and proper use of surgical instruments would be the basis for immunity waiver if the state surgeon made an erroneous medical judgment during the surgery that resulted in injury. *See Clark*, 923 S.W.2d at 585–86 ("There cannot be waiver of sovereign immunity in every case in which medical treatment is provided by a public facility. Doctors in state medical facilities use some form of tangible personal property nearly every time they treat a patient."). "If there is waiver in all [cases involving use of a medical instrument], the waiver of immunity is virtually unrestricted, which is not what the Legislature intended." *Miller*, 51 S.W.3d at 586.

In an analogous case, the First Court of Appeals rejected the plaintiff's contention that subsection (2) waives immunity for an injury stemming from a surgeon's non-negligent use of non-defective surgical instruments coupled with a purportedly negligent medical decision. *See Kamel v. Univ. of Tex. Health Science Center at Houston*, 333 S.W.3d 676 (Tex. App.—Houston [1st Dist.] 2010, pet.

denied).  In *Kamel*, a state surgeon performed surgery to remove fluid from around the plaintiff's right testicle.  *Id.* at 679.  During the procedure, the surgeon allegedly negligently determined that the testicle should be removed, which he accomplished using surgical instruments.  *Id.*  Holding immunity was not waived, the court of appeals explained:

> [The plaintiff] has made no claim that the surgical instruments themselves were defective in any way or that they were used in a negligent manner.  Rather, the crux of [the plaintiff's] argument is that [the surgeon] made an erroneous medical judgment in determining that [the plaintiff's] testicle needed to be removed.  The fact that tangible personal property was used during the procedure conducted as a result of the allegedly erroneous judgment does not establish that the use of the surgical instruments itself was the proximate cause of [the plaintiff's] injury, and, thus, these allegations do not fall within the limited waiver in section 101.021(2).

*Id.* at 686; *see also Miers v. Tex. A & M Univ. Sys. Health Science Center*, 311 S.W.3d 577, 579–80 (Tex. App.—Waco 2009, no pet.) (holding subsection (2) did not waive immunity for an injury stemming from state dentist's non-negligent use of surgical instrumentality coupled with a purportedly negligent medical decision to extract plaintiff's teeth); *Tex. Tech Univ. Health Science Center v. Lucero*, 234 S.W.3d 158, 169 (Tex. App.—El Paso 2007, pet. denied) (holding subsection (2) did not waive immunity for claims stemming from state surgeon's non-negligent use of stent coupled with purportedly negligent medical decision not to conduct additional testing when plaintiff complained of pain after stent was placed).  Similarly, the crux of the DeSotos' claims is that Judy was injured after Dr. Malik made erroneous medical judgments following Dr. Malik's and Dr. Adams's non-negligent use of surgical instruments.  The TTCA does not waive immunity for such claims.

11

Finally, the DeSotos argue that their interpretation of subsection (2) is the only logical interpretation of a statute jurists have frequently called indecipherable. *See Miller*, 51 S.W.3d at 592 (Hecht, J., concurring) (lamenting that the "use-of-property standard" in subsection (2) "cannot be understood and consistently applied"); *Lowe*, 540 S.W.2d at 301–03 (Greenhill, C.J., concurring) (requesting the Legislature reconsider the arcane waiver of immunity provisions of TTCA).[8] We agree that courts have struggled interpreting subsection (2). However, it is clear the Legislature did not intend for sovereign immunity to be waived for a state employee's non-negligent use of non-defective personal property.

Accordingly, we sustain UTHSCH's sole issue. We reverse the trial court's order denying UTHSCH's plea to the jurisdiction and render judgment dismissing the DeSotos' claims against UTHSCH for want of jurisdiction.


/s/     John Donovan
        Justice


Panel consists of Justices Boyce, McCally, and Donovan. (McCally, J., dissenting).

---

[8] The DeSotos also contend their interpretation best complies with the Legislature's mandate that the TTCA "shall be liberally construed to achieve the purposes hereof." Tex. Rev. Civ. Stat. Ann. art. 6252-19, § 13 (repealed). However, this mandate has been repealed, and courts are to follow the general principles of statutory construction in the Code Construction Act. *See Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 n.3 (Tex. 1994). According to these principles, "[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code Ann. § 311.034 (West Supp. 2012).